FILED
2021 Aug-19  PM 04:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **DAZSA WOODS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Civil Action No.** |
| | ) |
| **THE LEARNING TREE, INC.,** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **Defendant.** | ) |
| | ) |
| | ) |

## COMPLAINT

### STATEMENT OF JURISDICTION

1.    The jurisdiction of this Court is invoked pursuant to its general original jurisdiction and under other statutory authority. This is a suit authorized and instituted pursuant to 42 U.S.C. Section 2000e, et seq , known as Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); and 42 U.S.C. Section 1981.

2.    This Court has original jurisdiction, pursuant to 28 U.S.C. §1331, as this civil action arises under the laws of the United States cited above. This Court also has original jurisdiction, pursuant to 28 U.S.C. §1343(a); as this civil action seeks to secure the protection of, and redress the deprivation of, rights secured by Title VII and § 1981, providing for injunctive and other relief against discrimination.

3.    Venue is proper in this district, pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claim occurred in Shelby County located in this judicial district.

4.    Plaintiff has fulfilled all conditions precedent to the institution of this action, as

1

required under Title VII.

## STATEMENT OF THE PARTIES

5.     Plaintiff Dazsa Woods (hereinafter referred to as "Plaintiff" or "Woods") is an African-American individual over the age of nineteen (19) years. At all times relevant to this Complaint, Plaintiff was a resident of the State of Alabama and a full-time employee of the named defendant.

6.     Defendant The Learning Tree, Inc. (hereinafter "Defendant," ""The Learning Tree," or "TLT"), is an entity subject to suit under Title VII. At all times relevant herein, TLT was Plaintiff's employer.

## STATEMENT OF THE FACTS

7.     Plaintiff is an African American woman.

8.     Plaintiff began her employment with TLT in or near September, 2020. According to its website,"The Learning Tree is a nonprofit organization dedicated to providing educational, residential and support services for children and adolescents with developmental disabilities, including autism." As a part of its "residential program," TLT's website states that "[o]ur program provides each child 24-hour care in a homelike setting that is suited to their unique and special needs."

9.     TLT placed employees in different residential homes to care for the special needs individuals under TLT's care. The employees staffed the homes 24 hours a day to care for the residents. TLT cared for residents who ranged in age from 6-21 years old.

10.    Plaintiff was hired as a Residential Instructor. However, due to Plaintiff's hard work and dedication, she was promoted to Residential Lead within her first few months of employment.

2

11.     During Plaintiff's initial interview process, she was made aware of the possibility of residents conducting themselves inappropriately; however, she was never made aware that employees would be subjected to physical and/or sexual assault. More specifically, Plaintiff was not made aware that she would have her undergarments torn off of her and her private parts struck, groped and grabbed in violent and painful ways on a regular basis by a much larger grown man.

12.     Indeed, in the capacity of her position, Plaintiff was assigned to one of TLT's residential properties referred to as the Pup Run House. At Pup Run, Plaintiff and several other employees were tasked with caring for three male residents. One of the residents was TH. TH was over six feet and two inches in height and weighed over 200 pounds. Comparatively, Plaintiff is five feet and three inches in height and weighs approximately 120 pounds.

13.     Upon information and belief, TH was brought to The Learning Tree due to repetitive instances of sexually assaulting female employees/workers at a previous residential care facility. As such, The Learning Tree was well aware of TH's propensity to violently and sexually grab females. However, rather than taking any form of remedial action to protect its employees, The Learning Tree continually minimized the severity of TH's actions, brushing it off as a simple "touching." At no time was Plaintiff made aware that TH's actions would cause her physical harm, sexual assault and battery, and mental anguish. Unfortunately, minimizing such actions was a common practice of The Learning Tree.

14.     In November of 2020, Plaintiff and her coworkers were transporting residents, including TH, in a van. While in the van and without warning, TH reached his hand into the waistband of Plaintiff's pants and began to grope her hip, buttocks and thighs. Plaintiff immediately attempted to pull TH's hand from inside of her pants. However, when Plaintiff did so, TH became

3

visibly angry and began to grab Plaintiff more forcibly. Plaintiff, beginning to panic, yelled at TH to stop but he did not. Rather, TH became increasingly agitated and grabbed Plaintiff's panties. He then began pulling the panties up and out of Plaintiff's pants. This act caused great pain to Plaintiff's vagina and anal area. Plaintiff utilized all of strength but could not get TH to stop. Finally, due to his strength and determination, TH pulled Plaintiff's panties with such force that they were ripped from her body. When TH had Plaintiff's panties in his hand after they had been torn from her body, he finally began to calm down.

15.     Along with embarrassment and humiliation, this assault caused Plaintiff excruciating pain in her vaginal and anal area. In fact, Plaintiff was in so much physical pain that a company supervisor who witnessed the assault had to help Plaintiff apply an ointment for pain and scarring around the affected area. However, despite her injuries, both physically and mentally, Plaintiff was not instructed to go to a medical provider for the on-the-job assault and battery. Instead, the act was minimized by TLT management.

16.     Indeed, Plaintiff reported the sexual assault to her direct supervisor, Phillip Whatley, and the fact that she now was fearful of TH and would rather not work with him anymore. However, despite her complaints and concerns, nothing was ever done. Rather, Plaintiff was told that she had to continue coming into work at Pup Run, despite the significant risk of being sexually assaulted again.

17.     Consequently, Plaintiff began looking for other jobs, as she could not afford to quit without having another opportunity for income. Sadly, Plaintiff was unable to obtain another job. As such, she had no choice but to continue to attend work with the hope that management would provide remedial and/or corrective action so she would not have to experience being physically hurt

4

and intimately violated. Unfortunately, TLT failed to take any form of corrective action.

18.     Soon after the van assault, in January, 2021, Plaintiff was in the Pup Run house with another African-American female coworker when TH began acting in a volatile manner again. He slapped Plaintiff on her buttocks several times. When Plaintiff instructed TH to stop and that slapping her buttocks was inappropriate, TH became agitated.  TH grabbed an onion and threw it at Plaintiff's face, striking her in the mouth. TH then  quickly approached Plaintiff, reached between her legs and forcibly grabbed  her vagina. Plaintiff screamed in pain.

19.     Seeing this, Plaintiff's coworker attempted to intervene but TH then violently grabbed her vagina. When TH finally let go of her, Plaintiff immediately called management to alert them of what was happening. Unsurprisingly, management just told Plaintiff to calm down, once again minimizing the assault.

20.     As a result of management's failure to take any sort of remedial action, Plaintiff's coworker felt the need to call the police, as they had just been sexually and physically assaulted by an aggressive, 21-year old, six foot two inch, 200 pound plus man. After the police arrived, a report of the assault was made and Plaintiff grew hopeful that a police report would be enough for the company to put a stop to what was consistently happening. Unfortunately, Plaintiff was wrong.

21.     The Learning Tree failed to take any sort of remedial action. Instead, Plaintiff received a written reprimand because the police were called concerning the assault, even though the company was aware that Plaintiff was not the one who called the police. Moreover, the company told Plaintiff that she was made aware of TH's behavior when she started the job. However, Plaintiff explained that she was not aware that she would be continually subjected to violent physical and sexual attacks by a much larger male.

5

22.     Just two days after the police were called, TH once again violently shoved his hand inside of Plaintiff's pants and forcibly squeezed her buttocks. Yet again, Plaintiff reported the assault to her supervisor Phillip and explicitly told him that she was not comfortable around TH due to constantly being sexually assaulted.

23.     Phillip informed Plaintiff that it was typical of TH to act this way and she responded that she was unaware of his propensity to commit such violent actions. Plaintiff then asked if she could be transferred to The Learning Tree's other house (Wellington). In no uncertain terms, Phillip told her she could not be transferred and that she had to continue coming into work. He further stated that if Plaintiff would rather not come in, she would have to find someone to cover her shift. This especially put pressure on Plaintiff because if someone were to cover her shift, she would miss out on her hourly pay, which she could not afford to do.

24.     However, Plaintiff had enough of being treated as if she were a sex toy and told Phillip that she might not be able to find anyone to work her fourteen-hour shift and that if she had to be written up due to feeling uncomfortable after multiple instances of sexual assault, she would take it. Phillip merely responded that "it's not about feeling uncomfortable." Phillip then proceeded to tell Plaintiff that when he began working for TLT, a resident would continually grab his private area as well and that he simply grew accustomed to it. Shockingly, Phillip then told Plaintiff she should do the same: "get used to it."

25.     The following week, there were two additional instances where TH attacked Plaintiff, violently pushed his hands into her pants and grabbed onto her buttocks. Each time, Plaintiff reported the assaults to Phillip and again requested if she could transfer houses. Phillip's response remained "no," and that she needed to grow used to the assaults on her private parts.

6

26.     Plaintiff was then made aware that she was not the first person TH sexually assaulted. Rather, he had sexually assaulted two white female employees in the past. However, the difference was that when the white females reported the attacks, The Learning Tree immediately transferred them to another house out of harm's way. Whereas Plaintiff and the other African American female at Pup Run were forced to continually undergo severe, pervasive, and unwanted sexual assaults. Additionally, the men assigned to the Pup Run house did not have to deal with being sexually assaulted on a regular basis. TH targeted the female employees. More specifically, TH targeted the vagina and buttocks of the female employees.

27.     Finally, on or around February 6, 2021, TH began acting in a violative manner yet again. This particular time, when TH forcibly gripped Plaintiff's vagina, she was in so much pain that she had to slap him in an effort to get him off of her and to release her vagina. She then called Phillip and informed him that something had to be done about this because she could not continue to deal with it anymore. Phillip only responded that Plaintiff calm down. He nor the Learning Tree took any action to correct the situation.

28.     Shortly thereafter, Plaintiff was made aware that the company intended to fire her that following Monday for engaging in self-defense. Plaintiff was tired of dealing with the constant sexual assaults and now she was concerned about having an unjust termination on her record.

29.     Furthermore, the Learning Tree failed to protect Plaintiff or take any form of remedial action as it related to the female-targeted sexual assaults by TH. Instead, The Learning Tree continually minimized TH's attacks, merely referring to them as "touching," and explaining that he allegedly has an IQ akin to that of a two-year old. Plaintiff adamantly disagrees with that assessment.

30.     TH has numerous abilities that a two-year old does not have, such as being able to

7

cook, play sports such as basketball, kickball, and cornhole, communicate adequately, engage in activities involving manual labor, and take care of his own hygiene. TH was aware of his actions of sexual assault and the Learning Tree knew this but instead described it as a simple "touching." Plaintiff never knew what TH was truly capable of doing. Moreover, the Learning Tree was well aware of TH's propensity to commit such actions and immediately took corrective action when the white female employees were being assaulted. Unfortunately, Plaintiff was treated much less favorably than her white counterparts because the Learning Tree ignored every single complaint made by her.

31.     As a result, Plaintiff felt she had no other choice but to resign, in lieu of being terminated, because her physical, emotional, and mental health were being adversely affected. Plaintiff also knew that termination of her employment was right around the corner.

32.     The actions and inactions of Defendant made it quite clear that Plaintiff was being forced out the door. Plaintiff has been discriminated and retaliated against by Defendant to the point that it caused constructive and retaliatory discharge.

## FIRST CAUSE OF ACTION
### Racial Discrimination
### under 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981

33.     Plaintiff re-alleges and incorporates by reference paragraph nos. 7-32 with the same force and effect as if fully set forth herein and further states as follows:

34.     Plaintiff is an African-American female.

35.     Plaintiff has been discriminated against and treated differently than similarly-situated employees because of her race.

8

36.     More specifically, Plaintiff continually reported each instance of sexual assault committed by TH, however The Learning Tree failed to take any action. To the contrary, when TH sexually assaulted two white female employees, The Learning Tree promptly transferred them to another house so that they would not have to deal with such actions anymore.

37.     Plaintiff even made that same request to her direct supervisor, Phillip but he informed her that she could not be transferred, even when she made clear to him that she could not handle the constant sexual assaults. As a result, Plaintiff was forced to withstand the continual violent and painful assault of her private parts, when her white counterparts were immediately transferred.

38.     Defendant had no legitimate non-discriminatory reason to subject Plaintiff to repeated sexual assaults but ensure her white counterparts were taken care of and placed away from the harm.

39.     These acts discussed throughout this Complaint affected the terms, conditions and/or privileges of Plaintiff's employment when she was forced to continually experience such egregious violative actions and her similarly situated white counterparts did not.

40.     Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII and Section 1981.

41.     As a result of Defendant's actions, Plaintiff has suffered harm including, but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**SECOND AND THIRD CAUSES OF ACTION**
**Gender Discrimination and Sexual Harassment**
**under 42 U.S.C. § 2000e, et seq.**

42.     Plaintiff re-alleges and incorporates by reference paragraph nos. 7-32 with the same

9

force and effect as if fully set forth herein and further states as follows:

43. Plaintiff is an African-American female.

44. Plaintiff has been discriminated against and treated differently than similarly-situated employees because of her gender.

45. Plaintiff has also been subjected to unwelcome sexual harassment.

46. More specifically, TH's actions were unwelcome, unwanted and offensive to Plaintiff.

47. TH's actions of violently grabbing/hitting Plaintiff's private parts and ripping off her underwear were based on Plaintiff's gender as he did not commit such actions toward any male employees.

48. TH's actions toward Plaintiff were sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment because she had to withstand sexual assault each day she went into work.

49. Plaintiff opposed TH's actions against her. Plaintiff spoke of her discomfort to her direct supervisor, Phillip Whatley, to coworkers and other managers at The Learning Tree. However, The Learning Tree failed to take any form of remedial action.

50. When TH assaulted another African-American female, resulting in her calling the police, Plaintiff was reprimanded even though she was not the one who called the police.

51. On the last assault by TH, Plaintiff was in so much pain that she felt she had no other choice but to slap him in an effort to get him off of her and to have her vagina released. Unfortunately, The Learning Tree reprimanded Plaintiff yet again, this time for engaging in a valid act of self-defense. To avoid having an unwarranted termination on her record, Plaintiff felt she had no choice but to resign from her position.

10

52.    Defendant failed to exercise reasonable care to prevent and promptly correct TH's sexually harassing behavior. Furthermore, Plaintiff reported the harassment, thereby taking advantage of any preventative or corrective opportunities to avoid harm.

53.    Defendant was aware of the hostile and discriminatory environment and refused to take appropriate remedial action.

54.    Defendant ratified and condoned such behavior by failing to take appropriate remedial action.

55.    Defendant failed to failed to take adequate remedial action after Plaintiff complained each time she was sexually harassed.

56.    Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII and Section 1981.

57.    As a result of Defendant's actions, Plaintiff has suffered harm including, but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

## FOURTH CAUSE OF ACTION
### Retaliation
### under 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981

58.    Plaintiff re-alleges and incorporates by reference paragraph nos. 7-32 with the same force and effect as if fully set forth herein and further states as follows:

59.    Plaintiff began experiencing sexual harassment and disparate treatment based on her gender and race shortly after she began working for The Learning Tree.

60.    On multiple occasions, Plaintiff complained about this harassing and discriminatory

11

treatment to her direct supervisor and other management, thereby engaging in protected activity. However, nothing was ever done to remediate the issues Plaintiff complained about. Rather, Plaintiff was subjected to retaliation in the form of being reprimanded.

61.     Plaintiff was reprimanded on several occasions after she complained about the sexual harassment she was facing at the hands of TH.

62.     Indeed, when another African-American female employee called the police due to TH's sexual assaults, Plaintiff received a written reprimand even though she was not the one who called the police.

63.     Furthermore, when Plaintiff was victim to an attack that was especially painful, she had no choice but to defend herself by slapping TH to get him off of her. However, upon doing this, she faced disciplinary action, unlike other employees who had not engaged in protected activity.

64.     Defendant, through the conduct of their agents, have violated Plaintiff's rights under Title VII and Section 1981.

65.     As a result of Defendants' actions, Plaintiff has suffered harm including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment, as well as other monetary damages. Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering and loss of enjoyment of life.

### FIFTH CAUSE OF ACTION
### Retaliatory (Constructive) Discharge
### under 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981

66.     Plaintiff re-alleges and incorporate by reference paragraph nos. 7-32 with the same force and effect as if fully set forth herein and further states as follows:

67.     After experiencing what she believed to be sexually harassing acts by TH, Plaintiff

12

complained to Defendant's supervisory level agents/employees each time it happened.

68.     Defendant knew or should have known that Plaintiff had complained numerous times for sexual harassment. However, Defendant allowed the conduct of its supervisors to escalate to the point that Plaintiff was forced to resign due to the looming threat of being fired from her job, all because she engaged in a valid act of self-defense–which was because the Learning Tree failed to take any corrective action every other time she complained.

69.     Indeed, one of Defendant's last retaliatory acts was giving Plaintiff a written reprimand after complaining of the sexual harassment. Moreover, Plaintiff was also made aware The Learning Tree was going to terminate her employment as a result of her having to physically defend herself.

70.     Defendant knew or should have known of the retaliatory conduct toward Plaintiff and did not take prompt, effective remedial action. By failing to act or adequately act, Defendant ratified or condoned the continued actions of their supervisory agents and employees. Defendant is liable for the retaliatory discharge of Plaintiff.

71.     As a result of Defendant's actions, Plaintiff has suffered harm including, but not limited to, loss of employment opportunities, denial of raises, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life. humiliation, mental anguish and suffering and loss of enjoyment of life.

## SIXTH CAUSE OF ACTION
### Negligent Training and Supervision
#### under Alabama Law

72.     Plaintiff re-alleges and incorporates by reference paragraph nos.7-32 with the same

force and effect as if fully set forth herein and further states as follows:

73.    Defendant had a duty to properly train and supervise its employees on handling sexual harassment and racial discrimination. However, Defendant breached this duty by failing to train its employees and failing to supervise their handling of such incidents; indeed, Defendant's employees blatantly ignored any and all complaints of harassment and disparate treatment and did not take any steps to remedy the situations. Defendant's failure is causally connected to the sexual harassment described in this Complaint.

74.    Moreover, Defendant had a duty to exercise due and proper diligence as it related to employees. However, Defendant breached its duty by negligently failing to exercise due and proper diligence. Defendant's failure is causally connected to the sexual harassment described in this Complaint.

75.    More specifically, Defendant knew or should have known of the failure of its supervisory level agents/employees to respond adequately to Plaintiff's complaints of sexual harassment. In fact, Plaintiff continued to experience such harassment even after a police report was made. Moreover, Plaintiff was reprimanded because that police report was made. As such, Defendant negligently failed to respond and negligently failed to supervise and train its employees on how to adequately respond.

76.    Further, Defendant failed to address what TH was truly capable of; instead, Defendant merely brushed his propensity to commit violent sexual assaults as a mere "touching." Had Defendant appropriately addressed TH's true capabilities, such conduct would likely have been prevented.

77.    Defendant ratified and condoned the misconduct perpetrated by its supervisory level

14

agents/employees and then failed to take prompt remedial action.

78.     As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, injury including, pain, humiliation, mental anguish and suffering.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1.     Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination and retaliation by Defendant is violative of the rights of Plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq., the Civil Rights Act of 1991, and 42 U.S.C. § 1981.

2.     Grant Plaintiff a permanent injunction enjoining Defendant, their agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq., the Civil Rights Act of 1991; and 42 U.S.C. § 1981.

3.     Enter an Order requiring Defendant to make Plaintiff whole by awarding Plaintiff back-pay (plus interest), reinstatement or front-pay in lieu thereof, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages.

4.     Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this ligation.

5.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs

15

alleged in this suit, and this action for injunctive, declaratory and other relief, is the only means of

securing adequate relief.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**
**ON ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

Samuel Fisher
Sidney M. Jackson
Nicki L. Lawsen
*Attorneys for the Plaintiff*
**WIGGINS, CHILDS, PANTAZIS,**
**FISHER & GOLDFARB, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
sf@wigginschilds.com
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

**Notice of Lawsuit and Request for Waiver of Service to be Sent by Certified Mail to the Following:**

**DEFENDANT'S ADDRESS**

**The Learning Tree**
**c/o J M Williams, Registered Agent**
101 South Dubois Street
Tallassee, Alabama 36078